# EXHIBIT A

## LIMITED LIABILITY COMPANY AGREEMENT
### of
## OLD TOWN UTILITY & TECHNOLOGY PARK, LLC

### Dated:  July  15 , 2016

### ARTICLE I
### Formation

The Company and all of the Members of the Company agree to enter into this Limited Liability Company Agreement (the "LLC Agreement") in accordance with the provisions of the Maine Limited Liability Company Act, 31 M.R.S.A. §1501 et seq. (the "Act"), in order to define their respective rights and obligations in the Maine limited liability company known as "Old Town Utility & Technology Park, LLC" (the "LLC").

The LLC and the Members have acted in good faith in negotiating and entering into this LLC Agreement.  Each Member represents as follows:

(a)     The Member is legally free to enter into this LLC Agreement and to perform the Member's obligations under it in accordance with its terms;

(b)     Before accepting the terms of this LLC Agreement the Member has had every reasonable opportunity to consider these terms and to review them with the Member's personal attorney.

The Members hereby authorize and direct the law firm of Eaton Peabody, as authorized person, to take all actions necessary to complete formation of the LLC.

The Members hereby ratify, confirm and approve the filing of a Certificate of Formation on behalf of the LLC with the Maine Secretary of State's office on December 11, 2015 in the form attached to this LLC Agreement as **Exhibit A**.

NOW THEREFORE, for good and valuable consideration, the parties, intending to be legally bound, agree as follows:

### ARTICLE 2

In addition to the terms otherwise defined in this LLC Agreement, the following terms shall have the following respective meanings:

"Capital Account" means an account maintained for each Member pursuant to the rules of **Exhibit C** of this LLC Agreement.

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Member" means any Member of the LLC listed on **Exhibit B**.

"Membership Interest" means a Member's entire interest in the LLC, which shall be denominated in Membership Units.

"Transferring Member" means any Member or the personal representative of a Member, or any person, firm or corporation claiming by, through or under a Member, including without limitation any assignee for the benefit of creditors or trustee in bankruptcy or receiver, however appointed, of a Member, and including any creditor executing a judgment by an involuntary sale through judicial process, who desires to Transfer all or any portion of his, her or its Membership Units, and who has not received a Bona Fide Offer for the Membership Units.

"Transfer" means any transfer, assignment, sale, conveyance, hypothecation, license, lease, partition, pledge or grant of a security interest in a Member's Membership Units in the LLC, and includes any "involuntary transfer" such as a sale of any part of the Member's Units in connection with any Bankruptcy or similar insolvency proceedings, the death of a Member or a divorce or other marital settlement involving any Member, or any other disposition or encumbrance of a Member's Membership Units.

## ARTICLE 3
### Purpose

3.1     Name.  The name of the LLC shall be as indicated in the Certificate of Formation, as amended (the "Certificate").

3.2     Registered Agent and Registered Office.  The Registered Agent and Registered Office for the LLC shall be as indicated in the Certificate, and in any amendments thereto.

3.3     Principal Business Location.  The LLC's initial principal business location shall be at 136 Center Street, Old Town, Maine.

3.4     Purpose.  The LLC is formed for the purpose of owning, financing, selling, operating, and/or consulting with respect to the ownership, financing, sale or operation, of assets related to the former Expera pulp mill in Old Town, Maine and for all other business purposes permitted by the Act or the laws of any jurisdiction in which the LLC may do business (the "Business").  The LLC shall have all authority and powers necessary and convenient to carry out the Business.

3.5     Term.  The LLC's existence shall continue until the LLC is dissolved in accordance with the provisions of this LLC Agreement or the Act.

## ARTICLE 4
### Members; Membership Interests; Capital Contributions

4.1     Members.  The Members shall be as listed on **Exhibit B** attached hereto.

4.2     Membership Units.  The Members have made the contributions to the LLC of the cash, property, intellectual property, services and promises of cash, property and services identified on **Exhibit B.**   In exchange for those contributions, the LLC shall issue to each Member the number of Membership Units set forth opposite their respective names on **Exhibit B**.  No Member shall be obligated to make any additional contribution to the LLC without the prior unanimous consent of the Members.  The Managers shall amend **Exhibit B** from time to time to reflect the admission of new Members, or any changes in the Membership Interest of a Member.

4.3     Certification of Units.  The LLC's Membership Units may, at the option of the Managers, be represented by certificates.  In the event that certificates representing Membership Units are issued, such certificates shall bear a legend indicating the restrictions on transferability set forth in this LLC Agreement including the following legend, or one substantially similar thereto:

> THE SALE, TRANSFER, ASSIGNMENT, PLEDGE, OR ENCUMBRANCE OF THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO THE TERMS AND CONDITIONS OF AN LLC AGREEMENT DATED AS OF MAY ___, 2016, AMONG THE HOLDERS OF THE OUTSTANDING MEMBERSHIP INTERESTS OF OLD TOWN UTILITY & TECHNOLOGY PARK, LLC, AS THE SAME MAY BE AMENDED OR RESTATED FROM TIME TO TIME.  COPIES OF SUCH AGREEMENT MAY BE OBTAINED AT NO COST BY WRITTEN REQUEST MADE BY THE HOLDER OF RECORD OF THIS CERTIFICATE TO THE MANAGERS OF OLD TOWN UTILITY & TECHNOLOGY PARK, LLC.

4.4     Additional Securities.  Subject to the terms and conditions of this Article 4, the LLC may issue (i) additional Membership Units, (ii) securities or debt convertible into or exchangeable for Membership Units, or (iii) options, warrants or rights to acquire Membership Units, at any time and from time to time to such persons, for such consideration and on such terms and conditions, as the Managers shall determine.

Any additional Membership Units authorized to be issued by the LLC pursuant to this Article 4 may be issued in one or more classes, or one or more series of any such classes, with such designations, preferences privileges, rights, powers and duties, including, without limitation, those related to profits and losses, distributions, redemptions, conversion, exchange or voting, as shall be determined by a majority vote of the Managers; provided, however, that such classes or series of classes shall not be senior to existing classes and series of Units without the prior unanimous written consent of the Members holding such existing classes or series.

4.5     Admission of Additional Members.  In the event that the LLC does, within the provisions of this Article 4, issue additional Membership Units or any such other security, option, warrant or right, the person so acquiring the same shall agree in writing, as a condition precedent to him, her, or it of such Membership Units, to be bound by all provisions of this LLC Agreement. In the event that any transferee validly acquires Membership Units, the person so acquiring the same shall agree in writing, as a condition precedent to

admission to the LLC as a Member, to be bound by all provisions of this LLC Agreement. Any person or entity which validly acquires Membership Units shall be automatically admitted as a Member of the LLC upon satisfaction of the conditions set forth in this Agreement.

## ARTICLE 5
### Rights and Obligations of Members

5.1     Limitation of Liability. Each Member's liability shall be limited as set forth in this LLC Agreement, the Act and other applicable law. Without limiting the generality of the foregoing, no Member shall have any liability for the debts and obligations of the LLC, nor any liability to repay to any other Member the amount of the Member's capital contribution.

5.2     Member Loans to the LLC. The Members may make loans to the LLC and be repaid the loans with interest on such arms length and commercially reasonable terms as the Managers shall determine. Each Member has the opportunity to make loans to the LLC in proportion to the Member's percentage of Membership Units in the LLC. If a Member cannot, or is not willing to make a loan to the LLC, then any one or more of the other Members may loan additional funds to the LLC to cover such amounts.

5.3     Consents, Votes. The affirmative consent or vote in person or by proxy of the Members who collectively own a majority of the LLC's Membership Units shall be the act of the Members for all purposes, unless a greater or different vote is required under this Agreement, or if the Act mandates a greater or different vote that cannot be modified under this Agreement.

5.4     Meetings. The Members may, but shall not be required to hold annual, periodic or other formal meetings. Meetings of the Members may be called by any Member or Members holding at least 10% of the Membership Units.

5.5     Action by Written Consent. Any action of the Members may be taken without a meeting if written consents, bearing the date of signature and describing the action taken, are signed by the Members holding not less than the minimum amount of Membership Units necessary to take such action.

## ARTICLE 6
### Allocations; Profits and Losses; Capital Accounts; Distributions, Generally

6.1     Tax Law Compliance.

(a)     The LLC shall be classified as a partnership for federal and state income tax purposes and shall not take any actions inconsistent with that classification. All provisions of this LLC Agreement as they relate to the maintenance of Capital Accounts and to the allocation of profits, losses, income, gain or credit are intended to have substantial economic effect within the meaning of Section 704(b) of the Internal Revenue Code of 1986 as amended (the "Code"). To the extent such provisions are deemed not to have substantial economic effect, they shall be modified in such

manner as the Managers may direct so as to be in compliance with the substantial economic effect requirements of Section 704(b) and the regulations thereunder.

(b)     On their respective shares of LLC income, losses, deductions, credits and other tax items, the Members shall be subject to federal income tax treatment as partners under Subchapter K of the Internal Revenue Code ("Code").  The Members shall not take any action inconsistent with the continued characterization of the LLC as such.

(c)     To the extent it constitutes self-employment income, individuals who are Members of the LLC shall be subject to self-employment tax on their allocable shares of LLC income as provided in IRC §§ 1401 and 1402 and Internal Revenue Sevice Prop. Reg. § 1.1402(a)-2.

6.2     Allocation of Profits and Losses.

(a)     Allocations to Members.  Except as may be required to comply with the special allocation provisions of the LLC's Tax Rules as set forth in **Exhibit C** and subsection 6.2(b) or as may be directed by the Board of Managers, all profits and losses shall be allocated to the Members in accordance with their Membership Interests, provided, however, that upon dissolution of the LLC, all distributions shall be made in accordance with the provisions of Article 13.

(b)     Limit on Losses Allocated/Reallocation.  The losses allocated pursuant to Section 6.2(a) hereof shall not exceed the maximum amount of losses that can be so allocated without causing any Member to have a Deficit Capital Account at the end of any fiscal year.  If some but not all of the Members would have a Deficit Capital Account as a consequence of an allocation of Losses pursuant to Section 6.2(a), the limitation set forth in this Section 6.2(b) shall be applied on a Member by Member basis so as to allocate the maximum permissible loss to each Member under Treasury Regulation §1.704-1(b)(2)(ii)(d).  All losses in excess of the limitation set forth in this Section 6.2(b) shall be allocated to the other Members to the extent consistent with this Section 6.2.

6.3     Regulatory Allocations.  All Regulatory Allocations shall be calculated and applied in accordance with this LLC Agreement, including the LLC's Tax Rules in attached **Exhibit C**.

6.4     Capital and Capital Accounts.

(a)     The LLC shall maintain the Members' Capital Accounts in accordance with the LLC's Tax Rules attached as **Exhibit C** of this Agreement.

(b)   <u>Interest on Capital; Loans by or to Members</u>.  No interest or other compensation shall be allowed to any Member with respect to such Member's Capital Account, except his, her or its share of the profits, losses and distributions of the LLC as hereinafter provided.  The LLC shall not make loans to, or borrow from, any Member without the prior consent of all the Managers.

(c)   <u>Withdrawal of Capital</u>.  Except as may be specifically provided in this LLC Agreement or with the Consent of the Managers, no Member shall have the right to disassociate from the LLC all or any part of his, her or its Capital Contribution nor shall he or she have any right to demand and receive property or cash of the LLC  in return of such Members' Capital Contribution.

(d)   <u>Liability of Members for Repayment of Capital</u>.  No Member shall have any personal liability for the repayment of any Capital Contribution of any other Member.

6.5   <u>Distributions, Generally</u>.

(a)   Except as otherwise provided in this LLC Agreement, the timing and amount of all distributions shall be determined by the Board of Managers.

(b)   <u>Tax Distributions</u>.  For each of the LLC's taxable years, the LLC shall, to the extent cash is available and except to the extent precluded by law, make Distributions in an amount such that each Member may receive an amount sufficient to pay such Member's federal and state income tax liability on net profits allocated by the LLC to such Member in said year.  Unless a Member can demonstrate that the amount so determined is insufficient, the amount of such distributions may, at the option of the LLC, be calculated on the assumption that all Members are subject to tax at the highest marginal tax rate, both state and federal, but able to utilize fully the deduction for state income taxes provided in Section 164 of the Code.  The LLC's determination of the distributions pursuant to this paragraph shall be binding and conclusive on all of the Members.

It is anticipated that such distributions will be made at such times as will coincide with the Members' obligations to make estimated tax payments.  Any overpayment made pursuant to this paragraph during any fiscal year of the LLC based upon an overestimate of the projected earnings of the LLC shall, at the LLC's option, be applied against distributions required to be made by the LLC under this paragraph in subsequent fiscal years.

6.6   <u>General</u>.

(a)   <u>Withholding</u>.  All amounts required to be withheld pursuant to Code

Section 1446 or any other provision of federal, state or local tax law shall be treated as amounts actually distributed to the affected persons for all purposes under this LLC Agreement.

(b)     All profit and loss shall be allocated, and all distributions shall be made to the Persons shown on the records of the LLC to have been Members as of the last day of the taxable year for which the allocation or distribution is to be made.  Notwithstanding the foregoing, unless the LLC's taxable year is separated into segments, if there is a Transfer or an involuntary disassociation during the taxable year, the profit and loss shall be allocated between the original Member and the successor on the basis of the number of days each was an Member during the taxable year; provided, however, the LLC's taxable year shall be segregated into two or more segments in order to account for profit, loss or proceeds attributable to any extraordinary nonrecurring items of the LLC.

(c)     The Board of Managers is hereby authorized, upon the advice of the LLC's tax counsel, to amend this Article 4, and Exhibit C hereto, from time to time, and as they deem necessary, in order to comply with the Code and the Regulations promulgated under Code Section 704(b).

(d)     The Board of Managers are authorized, without any further consent of the Members being required (except as specifically required herein) to make any and all elections for federal, state, local and foreign tax purposes, including, without limitation, any election, if permitted by applicable law:

(i)     to adjust the basis of Property pursuant to Code Sections 754, 734(b) and 743(b), or comparable provisions of state, local, or foreign law, in connection with Transfers of Interests and LLC distributions;

(ii)     with the consent of all of the Members, to extend the statute of limitations for assessment of tax deficiencies against the Members with respect to adjustments to the LLC's federal, state, local or foreign tax returns; and

(iii)     to the extent provided in Code Sections 6221 through 6231 and similar provisions of state, local or foreign law, to represent the LLC and the Members before taxing authorities or courts of competent jurisdiction in tax matters affecting the LLC or the Members, and to file any tax returns and execute any agreements or other documents relating to or affecting such tax matters, including agreements or other documents that bind the Members with respect to such tax matters or otherwise affect the rights of the LLC and the Members.

    (e)    Necessary tax information shall be delivered to each Member as soon as practicable after the end of each Fiscal Year of the LLC but not later than five (5) months after the end of each fiscal year.

## ARTICLE 7
### Management by Board of Managers

7.1    <u>Management by Managers</u>.  The LLC shall be managed by a Board of Managers elected by vote of the Members holding a majority of the LLC's Membership Units.

7.2    <u>Number, Tenure and Qualifications</u>.  The Board of Managers of the LLC shall consist of three (3) Managers with one manager to be appointed by each member.  Managers need not be Members of the LLC or natural persons.  Each Manager shall hold office until the Manager's successor shall have been appointed and qualified or until such earlier time as the Manager resigns or is removed pursuant to the terms of this Article.   The initial Managers of the LLC shall be David Edson, Samuel Eakin and Everett Deschenes.

7.3    <u>Authority; Decision Making; Third Parties</u>.  Subject to the limitations in this Agreement and any non-waivable provisions of applicable law, the Board of Managers shall have full and exclusive authority and power to manage the Business and affairs of the LLC and to act on the LLC's behalf, including the authority and power to purchase, sell, mortgage, lease and dispose of real, personal and intangible property, hire employees, contract with third parties, including affiliates, borrow money and pledge the assets of the LLC.  All management decisions shall be determined by a majority vote of the Managers unless a greater vote is required under this LLC Agreement or the Act.  Absent a resolution of the Board if Managers granting specific or general authority to a specific Manager or officer to sign agreements or other legal instruments, or specific agreements or instruments, on behalf of the LLC, any and all agreements and legal instruments must be executed by a minimum of two (2) Managers.

7.4    <u>Action by Written Consent of the Managers</u>.  Any act of the Board of Managers may be taken without a meeting if written consents, setting forth the action taken or to be taken, at any time before or after the intended effective date of such action, are signed by the Managers entitled to vote on such action, provided that the necessary number of Managers necessary to take such action have executed such consents.  Consistent with the foregoing, a Manager may take no action in contravention of a vote of the Board of Managers, and a Manager violating this restriction is liable to the LLC and its Members in accordance with this LLC Agreement.

7.5    <u>Delegation of Authority of Managers; Officers</u>.  The Board of Managers may elect officers, with such titles as they determine appropriate, to whom they may delegate such rights, duties and responsibilities as they shall from time to time determine.  Such delegation shall not relieve the Managers of their responsibility for managing the Business and affairs of the LLC, or affect their ability to bind the LLC in dealing with third parties.  The Managers shall have the right to elect any successor additional officer or remove any officer.  An officer shall hold office until a new election is held, unless the officer resigns or is removed.

7.6    <u>Limitation on Authority of Managers</u>. Notwithstanding anything to the contrary in

this LLC Agreement, the Board of Managers may not take the following actions without the prior unanimous consent of the Members:

    (a)    alter in any material respect the nature or scope of the business of the LLC; or

    (b)    dispose or contract for a disposition of all or substantially all of the LLC's property or assets; or

    (c)    enter into any transactions, or series of related transactions, as the result of which there is a change in the majority ownership of the LLC; provided that a transfer to an entity controlled by or under common control with the transferor shall not be deemed to effect a change in majority ownership for this purpose; or

    (d)    issue any additional securities enumerated in Article 4 of this Agreement.

    7.7    <u>Compensation of Managers and Officers</u>.  The Managers and officers may be paid such reasonable compensation at then existing market rates for rendering services to the LLC as shall be approved by a vote of the Members holding a majority of the Membership Units of the LLC. No Manager or officer shall be prevented from receiving such compensation by reason of the fact that he or she is also a Member of the LLC.

    7.8    <u>Resignation</u>.  Any Manager of the LLC may resign at any time by giving written notice to the Members at least thirty (30) days in advance of his/her resignation.  The resignation of any Manager shall take effect upon the date specified in the notice.  The resignation of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a disassociation of a Member.  The resignation of a Manager shall not absolve the Manager from any liabilities to the LLC or to the Members arising on or before the effective date of the resignation.  Upon resignation of a Manager, a replacement shall be appointed by the Member entitled to appoint such Manager.

    7.9    <u>Removal</u>.  Any Manager may be removed from the Board of Managers at any time, with or without cause, by a vote of the Members holding not less than three quarters (3/4) of the LLC's Membership Units.  The removal of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a disassociation of a Member.  Upon removal of a Manager, a replacement shall be appointed by the Member entitled to appoint such Manager.

    7.10    <u>Fiduciary Duty</u>.  Except as otherwise expressly limited by this Agreement, in all matters arising under or relating to this Agreement or relating to the business and internal affairs of the LLC, each Member involved in management of the LLC and each Manager shall act in good faith and shall owe a fiduciary duty to the LLC and its Members (i) to perform his, her or its duties with the knowledge, judgment, skill, diligence, initiative and timeliness that an ordinarily competent person in a like position would use under similar circumstances; (ii) to act in a manner that such person reasonably believes to be in or not opposed to the best interest of the LLC and of the other Members; (iii) not to engage, directly or indirectly, in any business transaction with the LLC  on such person's own behalf or on behalf of any third party unless

such person makes full advance disclosure to the other Members or Managers about the transaction and a majority of disinterested Members or Managers approve the transaction; (iv) not to exploit a business opportunity for the personal benefit of such person without first disclosing such opportunity to the LLC and affording it an opportunity to exploit such opportunity; and (v) to maintain in confidence all information relating to the LLC and all information in the possession or control of the LLC that is reasonably identified as confidential or as to which such person knows or reasonably should know that maintaining the confidentiality of such information would serve the best interests of the LLC.

7.11    Reliance on LLC Records.  A Manager, or a Member involved in the management of the LLC, shall not be deemed to have breached his/her fiduciary duty of care or loyalty under this LLC Agreement if, with respect to the matter in question, he/she  has acted in reasonable reliance on:

 (i)  LLC records;

 (ii)  Information, opinions, reports or statements presented to the Manager, Member or to the LLC by another Member or by any other person as to matters that, when presented to the Manager or Member, he/she reasonably believed to be within the other person's professional or expert competence; or

 (ii)  any provision of this Agreement.

## ARTICLE 8
## Restrictions on Transfers of Membership Interests

8.1    Restrictions on Transfer by Member. Notwithstanding any other provision of this Agreement, no Member may Transfer in any manner whatsoever all or any portion of that Member's Membership Units unless such Transfer has been approved by unanimous vote of the other Members.  In no event shall a Transfer be allowed if the Transfer would, (i) terminate the LLC for the purposes of Code Section 708 or cause the LLC to be classified as other than a partnership for U.S. federal income tax purposes, or (ii) result in a violation of applicable law, including U.S. federal or state securities laws, or any term or condition of this LLC Agreement. Any purported Transfer by a Member or any Assignee that is not in compliance with this LLC Agreement is hereby declared to be null and void and of no force or effect whatsoever.

8.8    Effective Date of Transfer.  Any Transfer of Membership Units in compliance with this Article shall be deemed effective as of the last day of the calendar month in which the Transfer occurs. The transferor and transferee shall execute such certificates or other documents, and perform such other acts, as the Board may reasonably request to give effect to such Transfer.

8.9    Injunctive Relief.  The LLC and the Members hereby declare that it is impossible to measure in money the damages which will accrue to the parties hereto by reason of the breach by any Member of the transfer restrictions set forth in this Article.  Therefore, the LLC and the Members shall have the right to specific performance of such obligations, and if any party hereto shall institute any action or proceeding to enforce the provisions hereof, each of the LLC and the

Members hereby waives the claim or defense that the party instituting such action or proceeding has an adequate remedy at law.

## ARTICLE 9
### Withdrawal and Deadlock

9.1     Voluntary Dissociation. Any Member may voluntarily dissociate and withdraw from the LLC as provided in Article 10.

9.2     Termination of Activity. If any Member ceases to actively participate in the business of the LLC, the other Members may require that such Member dissociate and withdraw from the LLC.  Upon such dissociation and withdrawal, such Member shall be entitled to any distribution or other compensation accruing or payable prior to the effective date of dissociation but shall not otherwise be entitled to any payment in respect of such Member's membership interest in the LLC.

9.3     Deadlock.   For purposes of this Agreement, a "deadlock" of the LLC will be deemed to exist whenever the Managers of the LLC are so divided respecting the management of the LLC's Business and affairs, lasting for a period of at least thirty (30) days,  that the votes required for action by the Managers cannot be obtained, with the consequence that the LLC is suffering, or will suffer, irreparable injury, or the business and affairs of the LLC can no longer be conducted to the advantage of the Members. In the event of a deadlock, Members owning of record not less than fifty percent (50%) of the issued and outstanding Membership Units of the LLC shall have the right, at any time while the deadlock shall be continuing, to request that the LLC be dissolved, whereupon all of the Members agree to vote their Membership Units and to take such other action as may be necessary to cause such dissolution.

## ARTICLE 10

### Dissociation

10.1     Events of Disassociation.  A Member's disassociation from the LLC occurs upon any one of the following events:

(a)     Voluntary dissociation upon not less than thirty (30) days written notice to the other Members;

(b)     A request to dissociate by the other Members pursuant to Section 9.2 of this Agreement.

(c)     Filing of a voluntary or involuntary petition in bankruptcy by a Member which is not dismissed within ninety (90) days; execution of an assignment by a Member for the benefit of creditors; or appointment of a trustee, receiver or liquidator for the Member or of all or substantially all of the Member's property, (except that this section shall not apply to a Member who is the sole remaining Member of the LLC).

{EP - 02155577 - v4 }

(d)     Termination of the legal existence of a  Member.

(g)     Transfer of a Member's entire Membership Interest (all of such Member's Membership Units) in the LLC when the transferee is admitted as a Member to the LLC.

10.2   <u>Rights of Member Following Dissociation</u>.  Following the effective date of a Member's Dissociation, the Member's right to participate in the LLC's governance, receive information concerning the LLC's affairs and inspect the LLC's books and records shall terminate; and (ii) the Member shall not be entitled to vote its Units upon any matter otherwise submitted to the Members for a vote (determined as if the dissociation had not occurred).  The LLC may set off against any distribution attributable to the Member's Membership Units, or against its Capital Account, all amounts such Member owes to the LLC, including any costs or damages resulting from the Member's breach of this Agreement.

## ARTICLE 11
## Standard of Liability; Indemnity

11.1   <u>Standard of Liability</u>.  The doing of any act or the failure to do any act by a Manager or a Member, the effect of which may cause or result in loss or damage to the LLC or its property, shall not subject the Manager or the Member to any personal liability to the LLC or to the other Members, unless the Manager or Member is found not to have acted honestly or in the reasonable belief that the action was in or not opposed to the LLC and its Members.

11.2   <u>Indemnification of Managers and Members</u>.  To the fullest extent permitted by law, the LLC shall indemnify, hold harmless and defend its Managers and Members from and against all claims, costs, expenses, losses, liabilities and damages (including amounts paid in satisfaction of judgments, in compromises and settlements, as fines and penalties and legal or other costs and reasonable expenses of investigating or defending against any claim or alleged claim ) of any nature whatsoever, known or unknown, liquidated or unliquidated, that are incurred by any indemnified party or the agents of such party and that arise out of or in connection with the Business and affairs of the LLC, or any alternative investment structure through which LLC investments are made, or out of the performance by such indemnified party, or agents of such party of any of the responsibilities hereunder. Notwithstanding the foregoing, no party shall be entitled to indemnification hereunder to the extent that such party's conduct constituted fraud, bad faith, intentional misconduct, a material and intentional violation of any applicable local, state or federal securities laws or an intentional and material breach of this Agreement.

Indemnification shall be made solely and entirely from LLC property and, except as otherwise expressly set forth herein, no Member shall be personally liable hereunder.  The indemnification rights and obligations described herein shall survive an event of withdrawal or resignation of a Manager or the dissolution, termination, and liquidation of the LLC.

11.3   <u>Expenses</u>.  Expenses, including legal fees and court costs, reasonably incurred by an indemnified party in defense or settlement of any claim that may be subject to a right of

indemnification hereunder shall be advanced by the LLC prior to the final disposition thereof upon receipt of an undertaking by or on behalf of the indemnified party to repay such amount to the extent that it shall be determined ultimately that such indemnified party is not entitled to be indemnified hereunder. No advances shall be made by the LLC without the prior written approval of the Managers.

11.4   <u>Indemnification Rights Cumulative</u>.  The indemnification rights contained herein shall be cumulative of an in addition to any and all rights, remedies and recourse to which the indemnitee shall be entitled whether pursuant to the provisions of this LLC Agreement, at law, or in equity and shall extend to such indemnified party's successors, assigns and legal representatives.

11.5   <u>Indemnification of Employees, Agents and Officers</u>.  The LLC may indemnify its employees, agents and officers who are not Managers or Members to such extent as may be approved by the Managers, provided that no such person may be indemnified to a greater extent than provided herein with respect to Managers and Members.

## ARTICLE 12
### Term; Dissolution

12.1   <u>Term; Dissolution</u>.  The LLC shall exist perpetually until dissolved upon the happening of one or more of the following events:

(a)     the unanimous consent of the Members to terminate the LLC; or

(b)     the entry of a decree of judicial dissolution under the Act.

The dissociation of a Member or the transfer of a Membership Interest shall not cause dissolution.

12.2   <u>Winding Up; Liquidation; Distribution of Assets</u>.  Upon the LLC's dissolution, the Managers shall take all necessary actions to wind up the LLC's affairs and the LLC shall no longer actively conduct the Business.  Upon completion of the winding up, the Managers shall make all appropriate filings with the Maine Secretary of State.  The Managers shall, in accordance with applicable law, distribute or apply the LLC assets as follows:

(a)     sell or otherwise liquidate all of the LLC's assets as promptly as practicable (except to the extent the Managers may decide to distribute any assets in kind);

(b)     discharge or make reasonable provision of all liabilities of the LLC, including liabilities to Members who are also creditors (other than liabilities to Members for distributions and the return of capital) and establish such reserves as may be reasonably necessary to provide for contingent liabilities of the LLC; and

(c)     after discharging or making reasonable provision for all liabilities of the LLC, distribute the remaining assets of the LLC to the Members in accordance with the

positive balances in their Capital Accounts after taking into account all Capital Account adjustments for the taxable year of the dissolution.

12.3   <u>Certificate of Cancellation</u>. Upon completion of the winding up, liquidation and distribution of the assets of the LLC, the Managers shall forthwith file with the Secretary of State a Certificate of Cancellation.  Thereafter, the Managers shall have authority to distribute any LLC property discovered after termination, convey real estate and take such other action as may be necessary on behalf of and in the name of the LLC.

12.4   <u>Return of Capital Contribution - Nonrecourse</u>.  Except as provided by law or as expressly provided in this LLC Agreement. Upon dissolution, each Member shall look solely to the assets of the LLC for the return of his, her or its capital contribution.  If the LLC property remaining after the payment or discharge of the debts and liabilities of the LLC is insufficient to return the capital contribution of a Member, such Member shall have no recourse against any other Member.

## ARTICLE 13
## Miscellaneous

13.1   <u>Notices</u>. Any and all notices, requests, or other communications required hereby shall be given in writing and shall be hand delivered or sent by certified mail, return receipt requested, with first class postage prepaid; and such notices shall be addressed: (i) if to the LLC, to the principal office of the LLC and to counsel for the LLC; and (ii) if to any of the Members, to the address of the Member as reflected in the records of the LLC, unless notice of a change of address is furnished to all parties. Any notice that is required to be made within a stated period shall be considered timely if postmarked before midnight of the last day of such period.

13.2   <u>Invalid of Unenforceable Provisions</u>. The invalidity or unenforceability of any particular provision of this LLC Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

13.3   <u>Benefit and Burden</u>.  This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto, their personal representatives, heirs, successors or assigns, or any other legal representatives.

13.4   <u>References</u>. The use of any gender herein shall be deemed to include the other genders, and the use of the singular herein shall be deemed include the plural and vice versa, wherever appropriate. At any time when the LLC is managed by its Members as provided by law, any reference herein to the Managers or board of Managers of the LLC shall be deemed a reference to the Members to the extent appropriate in the context of the reference.

13.5   <u>Changes and Waiver</u>. No change or modification of this Agreement shall be valid unless the same is in writing and signed by all the parties hereto. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the person against whom it is sought to be enforced. The failure of any party at any time to insist upon strict performance of

{EP - 02155577 - v4 }

any condition, promise, agreement, or understanding set forth herein shall not be construed as a waiver or relinquishment of the right to insist upon strict performance of the same or any other condition, promise, agreement, or understanding at a future time.

13.6    Entire Agreement. This Agreement sets forth the entire agreement of the parties with respect to transfer of the Membership Units of the LLC and supercedes all other agreements and understandings, whether oral or written, express or implied, among them with respect to such Units.  Any and all prior agreements among the Members with respect to Units of Membership Interests are hereby revoked. This Agreement is, and is intended by the parties to be, an integration of any and all prior agreements or understandings, oral or written, with respect to Membership Units of the LLC.

13.7    Accounting Period and Methods.  The LLC's accounting period shall be the calendar year.  The LLC shall use such accounting methods as the Managers deem most advantageous. The LLC shall prepare its financial statements in accordance with generally accepted accounting principles.  The LLC's Federal Income Tax Return and Schedule K-1 shall be prepared by an independent certified public account approved by the Managers.

13.8    Records.  The LLC shall maintain for inspection by the Members at all reasonable times complete and accurate books and records of the LLC's affairs.  At a minimum, the LLC shall maintain copies of its Certificate of Formation and LLC Agreement with all amendments, current and past lists of all Members and their addresses, tax returns and financial statements for the past six years, consents or minutes of all meetings of the Members and all documents relative to any Member's obligation to contribute cash, property or services.

13.9    No Exclusive Duty.  Managers need not devote their full time and attention to the Business, but, subject to their duty of loyalty to the LLC, may engage in other business ventures. Neither the LLC nor any Member shall have the right to the profits derived from such other ventures, except to the extent the LLC or its Members may have an independent interest in such other ventures.

13.10    Applicable Law.  This Agreement shall be governed and construed in accordance with Maine Law.

13.11    Counterparts; Severability; Waiver; Binding Nature.  This LLC Agreement may be signed in several counterparts.  The invalidity, unenforceability or waiver of any provision of this Agreement shall not effect other provisions of this LLC Agreement.  This LLC Agreement is binding on the parties, their heirs, successors and assigns.

13.12    Amendments.  This LLC Agreement and the LLC's Certificate may only be amended by prior unanimous consent of the Members.

Executed by:

**Members**:

**JAMES W. SEWALL COMPANY**

Dated: 7/15_____, 2016

By:_____
Printed Name:_____
Its:_____

**RELENTLESS CAPITAL COMPANY, LLC**

Dated: _____, 2016

By:_____
Printed Name:_____
Its:_____

**OLD TOWN HOLDINGS II LLC**

Dated: _____, 2016

By:_____
Printed Name:_____
Its:_____

**LLC**:

**OLD TOWN UTILITY & TECHNOLOGY PARK, LLC**

Dated: 7/15_____, 2016

By: _____
David Edson, Manager

Dated: _____, 2016

By: _____
Samuel Eakin, Manager

Dated: _____, 2016

By: _____
Everett Deschenes, Manager

## Exhibit A

### Certificate of Formation of Old Town Utility & Technology Park, LLC

[Attached]

## Exhibit B

### Members

| Member: | Contribution: | Units Held: |
| --- | --- | --- |
| James W. Sewall Company<br>136 Center Street<br>Old Town, ME 04468 | $100 | 100 |
| Relentless Capital Company, LLC<br>_____<br>_____ | $100 | 100 |
| Old Town Holdings II LLC<br>_____<br>_____ | $100 | 100 |

## Exhibit C

### Allocations and Maintenance of Capital Accounts

C-1.   *Allocations; Special Rules.*

(a)   *Qualified Income Offset.*

(i)   Notwithstanding anything to the contrary contained in this Agreement, in no event shall losses of the LLC be allocated to a Member if such allocation would result in such Member having a Qualified Income Offset Amount.  All losses in excess of the Qualified Income Offset Amount shall be allocated first to those Members who would not have a Qualified Income Offset Amount after taking into account such allocation, and next among the Members in accordance with the provisions of Article 6.  For purposes of this Agreement, the term "Qualified Income Offset Amount" for a Member means the deficit balance, if any, in such Member's Capital Account as of the end of the relevant fiscal year after giving effect to the following adjustments: (i) credit to such Capital Account an amount equal to the sum of  (a) the Member's Share of Minimum Gain immediately prior to the allocation or distribution, (b) the Member's allocable share of any recourse indebtedness of the LLC as determined under Section 752 of the Code, and (c) any unconditional obligation of such Member to contribute additional amounts to the capital of the LLC in the future (to the extent not previously taken into account in determining such Member's share of recourse liabilities of the LLC) and (ii) debit to such Capital Account the allocations or distributions described in Section C-1(a)(ii) that, as of the end of the taxable year, are reasonably expected to be made to such Member.

(ii)   Notwithstanding any other provision of this Article, in the event any Member unexpectedly receives (a) an adjustment to the Capital Account balance of such Member as described in Treasury Regulation Section 1.704-1(b)(2)(ii)(d)(4), (b) an allocation to such Member of loss or deduction of the type described in Treasury Regulation Section 1.704-1(b)(2)(ii)(d)(5), or (c) a distribution to such Member in excess of any offsetting increase in the Member's Capital Account balance during or prior to the year of distribution, items of LLC profits and of income that constitute a credit to such Member's Capital Account shall be specially allocated to such Member in an amount and manner sufficient to eliminate, to the extent required by the Treasury Regulations under Code Section 704(b), the Qualified Income Offset Amount created by such adjustments, allocations, or distributions as quickly as possible; *provided, however,* that an allocation pursuant to this Section C-1(a)(ii)  shall be made only if and to the extent that such Member would have a Qualified Income Offset Amount after all other allocations provided for in this Article have been tentatively made as if this Section C-1(a)(ii) were not in this Agreement.

(b)   *Minimum Gain Allocation.*   Notwithstanding any other provisions of this Article, if in any year there is a net decrease in the amount of the LLC's Minimum Gain, each Member will be specially allocated items of profits and gain for such year (and, if necessary, in future years) equal to that Member's share of the net decrease in Minimum Gain, within the meaning of Treasury Regulation Section 1.704-2(g)(2), and subject to the exceptions set forth in Treasury Regulation Section 1.704-2(f).  For purposes of this Agreement, "Minimum Gain" means the amount determined by computing, with respect to each nonrecourse liability of the LLC, the amount of profits, if any, that would be realized by the LLC if it disposed of (in a

taxable transaction) the property subject to such liability in full satisfaction thereof and for no other consideration, and by then aggregating the amounts so computed, in accordance with Treasury Regulation Section 1.704-2(d). For purposes of determining the amount of such profits with respect to a liability, the adjusted basis for federal income tax purposes of the asset subject to the liability shall be allocated among all the liabilities that the asset secures in the manner set forth in Treasury Regulation Section 1.704-2(d)(2). Allocations pursuant to this Section C-1(b) shall be made in proportion to the respective amounts required to be allocated to each Member pursuant hereto. The items to be so allocated shall be determined in accordance with Treasury Regulation Sections 1.704-2(f)(6) and 1.704-2(j)(2).

(c)     *Member Nonrecourse Debt Minimum Gain.* Except as otherwise provided in Treasury Regulation Section 1.704-2(i)(4), if in any year there is a net decrease (within the meaning of Treasury Regulation Section 1.704-2(i)(3)) in Member Nonrecourse Debt Minimum Gain, any Member with a share of that Member Nonrecourse Debt Minimum Gain (determined under Treasury Regulation Section 1.704-2(i)(3)) as of the beginning of the year shall be specially allocated items of profits and gains for that year (and, if necessary, subsequent years) equal to that Member's share of the net decrease in Member Nonrecourse Debt Minimum gain in accordance with Treasury Regulations Section 1.704-2(i)(4) and 1.704-2(j)(2). This Section C-1(c) is intended to comply with the minimum gain chargeback requirement in Treasury Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

(d)     *Gross Income Allocation.* In the event any Member has a deficit Capital Account at the end of any allocation year that is in excess of the sum of the amount such Member is obligated to restore pursuant to the penultimate sentences of Treasury Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), each such Member shall be specially allocated items of LLC income and gain in the amount of such excess as quickly as possible; provided that an allocation pursuant to this Section C-1(d) shall be made only if and to the extent that such Member would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Agreement have been made as if Sections C-1(c) and this C-1(d) were not in the Agreement.

(e)     *Nonrecourse Deductions.* Nonrecourse Deductions for any fiscal year or other period shall be allocated among the Members in proportion to their Membership Interests.

(f)     *Member Loan Nonrecourse Deductions.* Any Member Loan Nonrecourse Deductions for any fiscal year or other period shall be specially allocated to the Member who bears the economic risk of loss with respect to the loan to which such Member Loan Nonrecourse Deductions are attributable in accordance with Treasury Regulation Section 1.704-2(i). For purposes of this Agreement, "Member Loan Nonrecourse Deductions" means any deduction of the LLC that are attributable to a nonrecourse liability for which a Member bears the risk of loss within the meaning of Treasury Regulation Section 1.704-2(i).

(g)     *Section 704(c) Allocations.*

(i)     In accordance with Code Section 704(c) and the Treasury Regulations thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the LLC shall, solely for tax purposes, be allocated among the Members so as to take account of any variation between the adjusted basis of such property to the LLC for federal income tax purposes and its Gross Fair Market Value. For purposes of this Agreement, "Gross

Fair Market Value" means, with respect to any asset, the fair market value of the asset as determined by the contributing Member and the LLC without regard to any liability assumed by the LLC with respect to such asset or any liability to which such asset is subject.

(ii)     In the event the Gross Asset Value of any LLC properties is adjusted pursuant to <u>Section C-2</u> hereof, subsequent allocations of income, gain, loss, and deduction with respect such asset shall take into account any variation between the adjusted basis of such asset for federal income tax purposes its Gross Asset Value in the same manner as under Code Section 704(c) and the Treasury Regulations thereunder.  For purposes of this Agreement, "Gross Asset Value" means, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as adjusted pursuant to <u>Section C-3(A)</u>.

(iii)     Any elections or other decisions relating to Section 704(c) allocations shall be made by the Members in any manner that reasonably reflects the purpose and intention of this Agreement.  Allocations pursuant to this Section are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing any Member's Capital Account, share of book profits and losses, distributions, or other items pursuant to any provision of this Agreement.

(h)     *Section 754 Election.*  Appropriate adjustments shall be made in the allocations to the Members under this Article in order to reflect adjustments in the basis of LLC property permitted pursuant to an election if made by the Members under Section 754 of the Code.  The LLC will make the basis adjustments and calculate depreciation deductions in accordance with such adjustments only for those transferees who supply information to the Members that enables the Members to determine when, and at what price, the transferee acquired its interest.

(i)     *Regulatory Allocations.*  The allocations set forth in <u>Sections C-1(a)</u>, <u>C-1(b)</u>, <u>C-1(c)</u>, <u>C-1(d)</u>, <u>C-1(e)</u>, <u>C-1(f)</u>, and <u>C-1(g)</u>, (the "Regulatory Allocations") are intended to comply with certain requirements of Treasury Regulation Section 1.704-1(b).  It is the intent of the Members that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with special allocations of other items of profits, losses, and items of income, gain, loss, or deduction pursuant to this <u>Section C-1(i)</u>.  Therefore, notwithstanding any other provision of this Article (other than the Regulatory Allocations), the Members shall make such offsetting special allocations of profits, losses, and items of income, gain, loss, or deduction in whatever manner they determine appropriate so that, after such offsetting allocations are made, each Capital Account balance is, to the extent possible, equal to the Capital Account balance each Member would have had if the Regulatory Allocations were not part of this Agreement and all items were allocated pursuant to <u>Section C-1</u>.  In exercising their discretion under this <u>Section C-1(i)</u>, the Members shall take into account future Regulatory Allocations that, although not yet made, are likely to offset other Regulatory Allocations previously made.  Capitalized terms in his Exhibit C not defined elsewhere in this LLC Agreement have the meanings assigned in the relevant treasury regulations (the "Treasury Regulations").

C-2.   *Maintenance of Capital Accounts; General Rules.*

(a)     A Capital Account shall be maintained on the books of the LLC for each Member, which shall be (i) credited with the Member's Capital Contributions and the amount of any liabilities that are assumed by such Member or that are secured by any property distributed to

such Member; (ii) credited with such Member's distributive share of profits and any income of the LLC that is exempt from federal income tax and not otherwise taken into account in computing profits; (iii) charged with such Member's distributive share of losses and any nondeductible expenditures of the LLC described in Code Section 705(a)(2)(B) or treated as Code Section 705(a)(2)(B) expenditures pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(i) and not otherwise taken into account under this Section; and (iv) charged with any distributions to such Member and with the amount of any liabilities of such Member that are assumed by the LLC or that are secured by any property contributed by such Member to the LLC.

(b)     Upon the sale, exchange, or other transfer of a Membership Interest, or the assignment of such Membership Interest to a new Member, the Capital Account of the transferor Member shall carry over to the transferee Member.

(c)     A Member shall not be entitled to demand the return of, or to withdraw, any part of its Capital Account, or to receive any distribution, except as provided in this Agreement.

(d)     The foregoing provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulations Section 1.704-1(b), and shall be interpreted and applied in a manner consistent with them.  In the event the Board of Managers shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto (including, without limitation, debits or credits relating to liabilities that are secured by contributed or distributed property or that are assumed by the LLC or any Members), the Board of Managers may make such modification, provided that it is not likely to have a material effect on the amounts distributed to any Person pursuant to Article 9 hereof upon the dissolution of the LLC.  The Board of Managers shall also (i) make any adjustments that are necessary or appropriate to maintain equality between the Capital Accounts of the Members and the amount of capital reflected on the LLC's balance sheet, as computed for book purposes, in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(q) and (ii) make any appropriate modifications in the event unanticipated events might otherwise cause this Agreement not to comply with Treasury Regulations Section 1.704-1(b).

C-3.    *Maintenance of Capital Accounts; Special Rules.*

(a)     *Gross Asset Value; Adjustments.*     In the case of property other than cash contributed to the LLC or distributed to a Member, each Member's Capital Account will be credited with the Gross Asset Value of property contributed to the LLC by such Member (net of liabilities assumed by the LLC and liabilities to which such contributed property is subject) and shall be debited with the cash and the Gross Asset Value of property distributed to such Member (net of liabilities assumed by such Member and liabilities to which such distributed property is subject).  For purposes of determining and maintaining the Members' Capital Accounts, the Gross Asset Value of LLC assets shall be adjusted as follows:

(i)   The initial Gross Asset Value of any asset contributed by a Member to the LLC shall be the Gross Fair Market Value of such asset;

(ii)  The Gross Asset Values of all LLC assets shall be adjusted to equal their respective Gross Fair Market Values, as determined by the Members, as of the following times:

(a) the acquisition of an additional Membership Interest in the LLC by any new or existing Member in exchange for more than a *de minimis* Capital Contribution; (b) upon liquidation of the LLC; (c) upon the distribution by the LLC of more than a *de minimis* amount of money or other LLC property to a retiring or continuing Member as consideration for a Membership Interest in the LLC; or (d) under generally accepted industry accounting practices (*provided, however,* that substantially all of the LLC's property (excluding money) consists of stock, securities, commodities, options, warrants, futures, or similar instruments that are readily tradeable on an established securities market);

(iii)   If the Gross Asset Value of an asset has been determined or adjusted pursuant to subsection (i) or (ii) of this Section C-3(a), such Gross Asset Value shall thereafter be adjusted by the Book Depreciation taken into account with respect to such asset for purposes of computing Book Profits and Losses, as set forth in Section C-3(b). "Book Depreciation" means, for each Fiscal Year or other period, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable with respect to an asset for such year or other period, except that if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such Fiscal Year or other period, Book Depreciation shall be an amount which bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization, or other cost recovery deductions for such Fiscal Year or other period bears to such beginning adjusted tax basis; and

(iv)   In the event the Gross Asset Values of LLC assets are adjusted pursuant to subsections (i) through (iii) of this Section C-3(a), the Capital Accounts of all Members shall be adjusted simultaneously to reflect the aggregate net adjustment as if the LLC recognized gain or loss equal to the amount of such aggregate net adjustment.

(b)   *Computation of Book Profits and Losses.*   For purposes of determining and maintaining the Members' Capital Accounts and the computation of Book Profits and Losses only, the following adjustments shall be made to the calculation of profits and losses reflected in the Members' Capital Accounts:

(i)   Book Profit or Loss resulting from any disposition of LLC property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Gross Asset Value, adjusted in accordance with Section C-3(a), of the property disposed of, notwithstanding that the adjusted tax basis of such property differs from such Gross Asset Value.

(ii)   In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such profits or losses, there shall be taken into account Book Depreciation for such Fiscal Year or other period.

(iii)   Allocations of Book Profits and Losses among the Members shall be made in accordance with the provisions of this Article respecting allocations of profits and losses among Members.

(c)   *Members' Share of Nonrecourse Liabilities.*   For purposes of Code Section 752, each Member's share of LLC nonrecourse liabilities shall be determined in accordance with Treasury Regulation Section 1.752-3(e).   For purposes of determining each Member's

proportionate share of the excess nonrecourse liabilities of the LLC pursuant to Treasury Regulation Section 1.752-3(a)(3), the Members' respective interests in profits shall be their respective Membership Interests.