## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| OLD TOWN UTILITY & TECHNOLOGY PARK, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 2:19-cv-00029-JDL |
| CONSOLIDATED EDISON, SOLUTIONS, INC., et al., | ) ) ) | |
| Defendants. | ) | |

### ORDER ON PLAINTIFFS' MOTION  FOR LEAVE TO AMEND

The Plaintiffs assert a variety of claims arising out of their allegedly wrongful exclusion from business opportunities associated with a long-term energy supply contract with the University of Maine System.  Following one withdrawn motion for leave to file an amended complaint and two unsuccessful motions for leave to file an amended complaint, the Plaintiffs have moved for the fourth time for leave to file an amended complaint.  For the reasons that follow, the Plaintiffs' motion (ECF No. 94) is denied.  In addition, I conclude that it is appropriate to remand the Plaintiffs' remaining state-law claims to the Maine Superior Court.

### I.  RELEVANT PROCEDURAL HISTORY

In my December 30, 2019 Order denying the Plaintiffs' first two motions for leave to file an amended complaint, I addressed the relevant, albeit convoluted, procedural history in this case.  *See* ECF No. 93 at 1–4.  I borrow liberally from that exposition here.

This action was removed from the Maine Superior Court to this Court in January 2019. Federal jurisdiction was premised on the presence of a federal question, namely two counts in the 127-page complaint alleging violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), with supplemental federal jurisdiction over related state-law claims. *See* 28 U.S.C.A. §§ 1331, 1367 (West 2019). In February 2019, I granted the parties' Joint Proposed Briefing Schedule, which required the Defendants to file their motions to dismiss at the end of the month and the Plaintiffs to file their responses in opposition by April 15. The Plaintiffs also filed a Motion to Remand to State Court, asserting that the case should be remanded primarily on abstention grounds.

On April 8, after the Defendants filed their motions to dismiss, and one week before the Plaintiffs' responses were due, the Plaintiffs filed a motion for leave to amend their complaint, but they failed to submit a draft of the proposed amended complaint. *See* ECF No. 54. The next day, Magistrate Judge John H. Rich III ordered the Plaintiffs to file the proposed amended complaint within seven days, explaining that it was needed "to provide the defendants with a fair opportunity to respond to the plaintiffs' motion" and "to provide the court with a meaningful opportunity to adjudicate the merits of the plaintiffs' motion." ECF No. 55. The following day, on April 10, the Plaintiffs moved to amend Magistrate Judge Rich's scheduling order to extend the period for the filing of the proposed amended complaint from April 15 to May 3. The motion asserted that the Plaintiffs' attorney was "leaving on an international family vacation the morning of Saturday, April 13, 2019," but it did not

indicate his scheduled return date.  ECF No. 56 at 1.  The motion further asserted that the Plaintiffs' attorney had to prepare the Plaintiffs' response to the Defendants' motions to dismiss due April 15, in addition to performing work required on other cases.

On April 12, 2019, the Court denied the Plaintiffs' Motion to Amend the Procedural Order, noting that the Plaintiffs had not made a "particularized showing" as to the need for an extension beyond "a busy April 12 and a vacation starting April 13 prior to multiple April 15 deadlines."  ECF No. 59.  In addition, the Order noted that the motion failed to explain why the Plaintiffs "waited more than five weeks after the filing of the defendants' motions to dismiss and just one week before the deadline for their responses to file their motion to amend, *without* the proposed amended complaint."  *Id.* (emphasis in original).  On April 16, 2019, one day after the Court's deadline for the Plaintiffs to file the proposed amended complaint, the Plaintiffs filed a notice with the Court stating that they "voluntarily withdraw their Motion for Leave to Amend, without prejudice to or waiver of their right to file such a motion at a later time."  ECF No. 63.

On May 28, the Court scheduled a hearing to be held on the motions to dismiss and the motion to remand for June 18.  Nearly two weeks later, the Plaintiffs filed a motion to continue the hearing, which represented that their attorney had a "long-scheduled family vacation" out of state.  ECF. No. 73.  The Defendants opposed the motion, arguing that the Plaintiffs' counsel delayed in alerting the Court to his vacation and that he had previously "attempt[ed] to alter settled schedules with

untimely assertions of vacation." ECF No. 74 at 1. In the Plaintiffs' reply, counsel asserted that he "misread his calendar when the hearing was originally scheduled, but immediately notified the Court as soon as he saw the conflict." ECF No. 75 at 1. The Court granted the continuance on June 11, 2019, setting the hearing for the following month. Two days later, the Plaintiffs filed a second motion for leave to amend their complaint, this time attaching a 99-page amended complaint with exhibits.

A hearing on the second motion for leave to amend, the motion to remand, and the Defendants' motions to dismiss was held on July 18. At the hearing, the Plaintiffs' attorney offered the following explanation as to why, when the Plaintiffs filed their motion to continue the June hearing, he had not alerted the Defendants or the Court that the Plaintiffs would seek to amend their complaint just a few days later:

> I didn't deem it pertinent to the request to continue frankly. The sole reason I was seeking continuance was to go on vacation with my family, a long-scheduled vacation. I noted that I had misread my calendar in my motion and apologized for that inadvertent mistake; but as stated in the motion, as this Court is well aware, that there isn't necessarily even a need to file a motion for leave to amend before motions to dismiss are heard.

ECF No. 84 at 37.

On September 30, I issued my decision on the Defendants' motions to dismiss, granting them in part and denying them in part, and I scheduled a hearing on the Plaintiffs' second motion for leave to file an amended complaint for November 4. *See* ECF Nos. 86, 87, 88. On the morning of the hearing, the Plaintiffs filed their third motion for leave to amend, attaching a proposed 112-page complaint and exhibits.

On December 30, I issued an order denying the Plaintiffs' second and third motions for leave to file an amended complaint. *See* ECF No. 93. The order explained that the second motion for leave to file an amended complaint was mooted by the third motion for leave to file an amended complaint. *See id.* at 6. The order then denied the latter motion based on the Plaintiffs' history of dilatory filings and their failure to identify the proposed amendments to the complaint in sufficient detail. *See id.* at 7. The order directed that any new motion for leave to amend should explain "how the proposed [amended complaint] cures the deficiencies in the original complaint as to each count and in relation to the order granting in part and denying in part the Defendants' motions to dismiss." *Id.* at 8.

On January 6, 2020, the Plaintiffs filed their fourth motion for leave to amend the complaint, captioned as a Second Motion for Leave to File *Second Amended Complaint*, which is the motion addressed by this order. Before evaluating the merits of the Plaintiffs' motion, I review the allegations contained in the proposed Second Amended Complaint.

## II. THE PROPOSED SECOND AMENDED COMPLAINT

The Plaintiffs' proposed Second Amended Complaint alleges that various defendants committed bribery to procure a multi-decade energy performance contract for the University of Maine. In pertinent part, the proposed Second Amended Complaint describes three alleged bribes as the predicate acts underlying the RICO conspiracy, which occurred in December 2015, May 2016, and "late 2016."

Specifically, the proposed Second Amended Complaint alleges the following facts.[1]  In December 2015, David Edson, the President and CEO of James W. Sewall Company, bribed James Page, who was Chancellor of the University of Maine System at the time, to take official action to ensure approval of a long-term energy contract between the University and Sewall's associates.  When the University System decided that the energy contract for the University needed to go through the formal RFP process, Page helped ensure that Edson's team won the bid.

According to the proposed Second Amended Complaint, the RFP had two phases, and a second bribe occurred in May 2016, when the "bribery conspirators" bribed Page to delay the announcement of the finalists from Phase I.  ECF No. 94-1 ¶ 37.  The conspirators allegedly sought this delay so that Sewall's associates could prepare an offer to buy the Expera pulp mill facility in Old Town, Maine, which they planned to use to generate the energy necessary to fulfill the energy contract.

The complaint further alleges that a third bribe occurred at the end of 2016, before the filing of Phase II submissions, when Treadwell Franklin Infrastructure Capital, LLC, bribed Page to allow Treadwell to replace another company as the financing subcontractor in Edson's bid team without notifying the University or other bidders.  The complaint asserts that such a substitution was improper because otherwise a bid team could become a finalist based on the qualifications of its initial team but then replace team members with subcontractors who had conflicts of interest or who were less qualified.  Treadwell and Edson allegedly held up their end

---

[1]  While the allegations have not been proven, I treat them as true for the purposes of this motion.

of the bribe to Page in May 2018, by engaging in conduct aimed at covering up Page's involvement in the December 2015 and May 2016 bribes.

### III.  LEGAL STANDARD

In some circumstances, a party may amend its pleading as a matter of course. *See* Fed. R. Civ. P. 15(a)(1).  Otherwise, as here, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[T]he 'spirit of the rule' dictates a preference for decisions 'on the merits, not because of missteps by counsel in pleading.'"  *J.S. McCarthy, Co. v. Brausse Diecutting & Converting Equip., Inc.*, 226 F.R.D. 14, 17 (D. Me. 2005) (quoting *Allendale Mut. Ins. Co. v. Rutherford*, 178 F.R.D. 1, 3 (D. Me. 1998)); *see also* 6 Charles Wright & Arthur R. Miller, Federal Practice and Procedure § 1474 (3d ed. 2019).  But Rule 15(a)(2) "does not mean . . . that a trial court must mindlessly grant every request for leave to amend."  *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006).  "Rather, a district court may deny leave to amend when the request is characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'"  *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013) (quoting *Palmer v. Champion Mortg.,* 465 F.3d 24, 30 (1st Cir. 2006)); *see also In re Curran*, 855 F.3d 19, 27–28 (1st Cir. 2017).

Ultimately, whether to grant leave to amend depends upon the totality of the circumstances.  *See Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 20–21 (1st Cir. 2017).  This includes whether the plaintiff was "attempting to torpedo [the Court's] briefing schedule," *D'Agostino v. EV3, Inc.*, 802 F.3d 188, 194–95 (1st Cir. 2015)

(citing *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517–18 (1st Cir. 1989)); whether the plaintiff, "by rule or court order, had a prior opportunity to amend," *Nikitine*, 715 F.3d at 390 (citations omitted); and any other "pertinent considerations," *Mulder*, 865 F.3d at 20–21 (quoting *Palmer*, 465 F.3d at 30–31).

## IV.  ANALYSIS

The Plaintiffs argue that the proposed Second Amended Complaint cures the deficiencies that the Court identified in their original complaint for two reasons. First, the Plaintiffs contend that the proposed Second Amended Complaint is restructured.   Second, the Plaintiffs assert that the proposed Second Amended Complaint contains new allegations pertaining to their Racketeer Influenced and Corrupt Organization Act ("RICO") claim and their various state law claims.  I focus throughout on the proposed amended RICO claim as it underlies the Court's subject-matter jurisdiction.

## A.    Restructuring of the Complaint

The Plaintiffs argue that "amending [the complaint] to add clarity can only strengthen notice to the Defendants and assist the Court in evaluating the Plaintiffs' claims on the merits."  ECF No. 94 at 4.  The Plaintiffs are correct that, especially on claims dismissed for failure to comply with heightened pleading requirements, providing greater specificity may not just be helpful but necessary.  Nevertheless, the Plaintiffs' argument that they have restructured the complaint for flow and clarity is misplaced.  The Plaintiffs submitted a similarly restructured proposed amended complaint with their third motion for leave to amend the complaint.  While the

restructuring would have aided the Court in its initial review of the complaint, I determined that it was insufficient to establish that the Plaintiffs were entitled to leave to file that proposed amended complaint. Similarly, the restructuring reflected in the proposed Second Amended Complaint does not, on its own, justify granting the Plaintiffs leave to amend the complaint. This is especially the case because the Plaintiffs have largely failed to identify and explain the import of the precise changes made in their proposed Second Amended Complaint as they were directed to by the Order entered December 30, 2019.

As noted in that Order, the interests of justice a court considers in deciding whether to grant leave "must and do take into account the burden on defendant[s] and the Court in devoting scarce resources to sift through each successive iteration of [a plaintiff's] complaint and [to] assess its legal sufficiency." *Johnson v. Infirmary Health Sys., Inc.*, Civil Action No. 13-0431-WS-M, 2013 WL 6062587, at *5 n.8 (S.D. Ala. Nov. 18, 2013). And the "absence of supporting information"—such as a "preview [of] what additional facts or legal claims might be included in [an] amended complaint"—"may, in and of itself, be a sufficient reason for the denial of leave to amend." *Aponte-Torres*, 445 F.3d at 58 (citing *Twohy v. First Nat'l Bank*, 758 F.2d 1185, 1197 (7th Cir. 1985)). Here, the proposed Second Amended Complaint spans 112 pages, contains over 350 numbered paragraphs, and includes 118 pages of exhibits. The failure of the Plaintiffs' motion to meaningfully identify the changes made to each count makes the task of identifying precisely which allegations were added, removed, altered, and relocated unnecessarily difficult.

As to the changes the Plaintiffs do identify as to the RICO counts, the Plaintiffs have unduly delayed in seeking leave to amend. Where significant time has passed between the filing of the complaint and the proposed amended complaint, the movant must "at the very least" show some valid reason for his or her neglect and delay. *Hagerty ex rel. U.S. v. Cyberonics, Inc.*, 844 F.3d 26, 34 (1st Cir. 2016) (quoting *Pérez v. Hosp. Damas, Inc.*, 769 F.3d 800, 802 (1st Cir. 2014)). "In assessing whether a movant has carried this burden, courts must take into account '[w]hat the plaintiff knew or should have known and what he did or should have done.'" *Id.* (quoting *Leonard v. Parry*, 219 F.3d 25, 30 (1st Cir. 2000)). In circumstances of undue delay, a court need not find prejudice to the non-moving party to deny the movant leave to amend. *See Hagerty*, 844 F.3d at 34 n.7; *see also In re Lombardo*, 755 F.3d 1, 3 & n.3 (1st Cir. 2014).

I ultimately granted the motions to dismiss the RICO claims in the original complaint on the basis that the complaint did not allege facts supporting RICO's pattern requirement. *See* ECF No. 86 at 9. On February 28, 2019, various defendants moved to dismiss the Plaintiffs' original complaint, in part, on this very basis, that is, that the Plaintiffs "do not, and cannot, allege facts to support RICO's pattern and continuity requirement." ECF No. 48 at 14; *see also id.* at 31–36. Before filing their response in opposition to that motion, the Plaintiffs filed their first motion for leave to amend the complaint. The Plaintiffs stated that it was their intent to "add further clarity to the existing counts, and provide additional factual information, some of which involves events that occurred after the suit was filed, and some of which

involves information that became available after filing." ECF No. 54 at 2. However, as previously noted, the Plaintiffs did not attach a copy of the proposed amended complaint to their motion, and the Magistrate Judge ordered them to do so by a date certain to "provide the court with a meaningful opportunity to adjudicate the merits" of the motion. ECF No. 55. Thereafter, the Plaintiffs requested more time to file the proposed amended complaint, but the Magistrate Judge denied the extension, emphasizing the Plaintiffs' already dilatory behavior in filing the motion. Then, instead of complying with the deadline and taking steps to clarify their complaint and provide additional factual information, the Plaintiffs withdrew their motion.

At the hearing to address the Plaintiffs' second motion for leave to amend their complaint, when asked what new facts the Plaintiffs had learned following the deadline the Magistrate Judge had set as to the Plaintiffs' first attempt to file an amended complaint, the only fact cited by Plaintiffs' counsel was that a named defendant had resigned as chancellor of the University of Maine System. The Plaintiffs' counsel then commented that the primary purpose of the proposed amendment was to "sharpen[]" the complaint "in light of the concerns that defendants had raised about . . . meeting the pleading requirements." ECF No. 84 at 40.

The Plaintiffs' proposed Second Amended Complaint was filed nearly nine months after the Magistrate Judge first ordered the Plaintiffs to submit a proposed amended complaint. The Plaintiffs have failed to show a valid reason for their delay in amending their allegations relating to RICO's pattern requirement in response to the Defendants' motion to dismiss. Indeed, "[t]he plaintiffs could have and should

11

have moved to amend as soon as they saw the defendants' arguments in the motion to dismiss, not waited to see whether the court would adopt those arguments." *Envision Realty, LLC v. Henderson*, 182 F. Supp. 2d 143, 144 (D. Me. 2002).

The Plaintiffs' pattern of conduct following the Magistrate Judge's order establishing a deadline for the submission of an amended complaint was unjustified and the delay resulting from it is undue.  *See D'Agostino*, 802 F.3d at 194–95. Although this conclusion is, standing alone, sufficient grounds to deny the motion to amend, *see Calderón–Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 20 (1st Cir. 2013), I turn to consider whether the amendments to the RICO claims, if permitted, would be futile, *see Mulder*, 865 F.3d at 21.

## B.    The RICO Claims

In their original complaint, the Plaintiffs brought separate RICO counts under both 18 U.S.C.A. § 1962(c) and § 1962(d).  Section 1962(c) makes it:

> unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C.A. § 1962(c) (West 2020).  Section 1962(d) makes it "unlawful for any person to conspire to violate" Section 1962(c).  *Id.* § 1962(d).  In my September 30, 2019 order on the Motions to Dismiss, I dismissed both RICO counts because the complaint failed to allege a pattern of racketeering.  *See* ECF No. 86 at 9 & n.7.  In other words, the allegations contained in the original complaint failed to satisfy RICO's pattern requirement.

The proposed Second Amended Complaint removes the § 1962(c) claim and alleges only a RICO conspiracy under § 1962(d).  Nevertheless, "[t]o survive a motion to dismiss, a RICO conspiracy count must allege," among other things, "that the defendant intended to further an endeavor which, if completed, would have satisfied the pattern requirement of RICO."  *Laverty v. Massad*, Civil Action No. 08-40126-FDS, 2009 WL 1873646, at *6 (D. Mass. Mar. 10, 2009) (citing *Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1561 (1st Cir. 1994) and *United States v. Cianci,* 378 F.3d 71, 88 (1st Cir. 2004)).  Accordingly, I again focus on whether the allegations in the proposed Second Amended Complaint plausibly satisfy the pattern requirement.

To prove a pattern of racketeering activity, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original).  This is known as the "continuity plus relationship" standard.  *Giuliano v. Fulton*, 399 F.3d 381, 387 (1st Cir. 2005).  Thus, a RICO's pattern requirement is not satisfied by "a single criminal event, a single criminal episode, [or] a single 'crime' (in the ordinary, nontechnical sense of that word)," even if "that single episode involves behavior that amounts to several crimes (for example, several unlawful mailings)."  *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 722–23 (1st Cir. 1992).

There are two methods to establish continuity: the open-ended approach and the closed-ended approach.  *Giuliano*, 399 F.3d at 387.  I evaluated the Plaintiffs' original complaint under both approaches and determined that the original complaint

failed to establish either open- or closed-ended continuity.  I instructed the Plaintiffs to explain "how the proposed Second Amended Complaint cures the deficiencies in the original complaint as to each count and in relation to the order granting in part and denying in part the Defendants' motions to dismiss."  ECF No. 93 at 8.  The Plaintiffs only discuss closed-ended continuity in relation to the proposed Second Amended Complaint, even after the Defendants commented that, by doing so, the Plaintiffs were effectively "conced[ing] that open-ended continuity does not apply." *See* ECF No. 99 at 6 n.4.  Accordingly, I evaluate the pattern requirement for the § 1962(d) claim only for closed-ended continuity.  For reasons I will explain, I conclude that the Plaintiffs' proposed amendments to the RICO claim are futile.

### 1. Closed-ended Continuity

"A closed-ended pattern sometimes can be established by examining only the number of alleged predicate acts and the duration of the alleged racketeering activity." *Home Orthopedics Corp. v. Rodríguez*, 781 F.3d 521, 529 (1st Cir. 2015) (quoting *Giuliano,* 399 F.3d at 387).  The original complaint alleged racketeering activity spanning approximately two years, but it did not clearly enumerate the alleged predicate acts.  *See* ECF No. 86 at 12–13.  Thus, I did not find closed-ended continuity based solely on those two criteria.  Accordingly, I evaluated the complaint for other indicia of continuity under what is known as the "middle-ground" approach to closed-ended continuity.  *Id.* at 13–15.  Under that approach, I found that the "'combination of single scheme, single injury, and few victims makes it virtually

impossible' for the Plaintiffs to establish closed-ended continuity." *Id.* at 15 (quoting *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 19 (1st Cir. 2000)).

The Plaintiffs maintain that the proposed Second Amended Complaint cures the deficiencies in the original complaint because the "predicate act allegations are reframed and simplified to focus on three acts of bribery." ECF No. 94 at 6. Specifically, they argue that the "reframing of the predicate acts addresses the Court's concern about lack of clarity regarding predicate acts, and also extends the length of the RICO conspiracy." *Id.* Thus, the Plaintiffs contend that the number of predicate acts and the length of the conspiracy alleged in the proposed Second Amended Complaint firmly establish closed-ended continuity and "remove the case from 'middle-ground' analysis." *Id.* In the alternative, the Plaintiffs maintain that closed-ended continuity is established under the middle-ground approach because the RICO claim alleged in the proposed amended complaint "involves multiple schemes, multiple injuries, and a significant number of victims." ECF No. 101 at 4.

### 2. **Futility Analysis**

Where, as here, the motion for leave to amend was filed before the commencement or completion of discovery, a court evaluates whether the proposed amendments are futile "through the lens of Federal Rule of Civil Procedure 12(b)(6)." *Parker v. Landry*, 935 F.3d 9, 13 (1st Cir. 2019) (citing *In re Curran*, 855 F.3d at 28). "So viewed, a proposed amendment is futile if it fails to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  I now analyze whether the facts alleged within the proposed amended complaint are sufficient to satisfy RICO's pattern requirement.

"[A] closed-ended pattern sometimes can be established by examining only the number of alleged predicate acts and the duration of the alleged racketeering activity."  *Home Orthopedics Corp.*, 781 F.3d at 529.  The Plaintiffs contend that the alleged racketeering activity now spans two and a half years because the alleged bribery conspirators delivered on their promise from the "late 2016" bribe in May 2018.  Even accepting that contention as true, the alleged number of predicate acts and the temporal duration of the alleged racketeering activity are not "so extensive that 'common sense compels a conclusion of continuity.'"  *Giuliano*, 399 F.3d at 387 (quoting *Efron,* 223 F.3d at 18).  *See, e.g.*, *Conway v. Licata*, 62 F. Supp. 3d 169, 174 (D. Mass. 2014) ("The commission of seven predicate acts over the course of twenty-nine months targeting two victims as part of a single effort to extract financial gains is not sufficient to establish closed-ended continuity.").

Where the duration of racketeering activity and the number of acts do not easily resolve the issue, a court examines other indicia of continuity under a "middle ground" approach to closed-ended continuity.  *See Giuliano*, 399 F.3d at 387.  These indicia include, "for instance, whether the defendants were involved in multiple schemes, as opposed to one scheme with a singular objective; whether the scheme affected many people, or only a closed group of targeted victims; and whether the scheme had the potential to last indefinitely, instead of having a finite nature."  *Home Orthopedics Corp.*, 781 F.3d at 529 (internal quotation marks and citation omitted).

I previously reviewed these indicia when I ordered the dismissal of the RICO counts in the original complaint. *See* ECF No. 86 at 13–15. I found that "the 'combination of single scheme, single injury, and few victims makes it virtually impossible' for the Plaintiffs to establish closed-ended continuity." *Id.* at 15 (quoting *Efron*, 223 F.3d at 19).

The Plaintiffs now argue that the proposed Second Amended Complaint alleges two schemes: one to acquire the Expera pulp mill and one to obtain the energy supply contract with the University of Maine System. I need not definitively determine whether the alleged attempt to acquire the Expera pulp mill is a scheme separate from the scheme to obtain the energy contract, because the predicate acts—the three alleged bribes—involved only the energy contract. Although one of the bribes allegedly involved Page extending the RFP deadline for the energy contract so that Sewall's associates could submit a bid for the Expera pulp mill, the bribe did not itself concern improper conduct taken to acquire the Expera pulp mill. Ultimately, courts take a "natural and commonsense approach to RICO's pattern element" when determining whether the facts of a case suggest the "kind of broad or ongoing criminal behavior at which the RICO statute was aimed." *Home Orthopedics Corp.*, 781 F.3d at 529 (quoting *Efron*, 223 F.3d at 18). And First Circuit precedent "firmly rejects RICO liability where the alleged racketeering acts, taken together, comprise a single effort to facilitate a single financial endeavor." *Id.* at 530 (alterations omitted) (quoting *Efron*, 223 F.3d at 19).

The Plaintiffs also argue that the victims are now more numerous because they include the bidders in the RFP process and the University of Maine System, presumably because the University of Maine System may have received a worse deal than it would have absent the Defendants' alleged actions. But this argument is nearly identical to the one the Plaintiffs made when I dismissed the RICO counts in the original complaint. As I have previously explained, the number of victims resulting from an allegedly improperly obtained government contract is not itself so great as to warrant a finding of continuity under First Circuit precedents. *See* ECF No. 86 at 14−15 (citing *Apparel Art*, 967 F.2d at 721−24; *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 105–06 (1st Cir. 2002); and *Giuliano,* 399 F.3d at 386, 390 & n.8).

Thus, the other indicia of continuity that the Plaintiffs rely on do not establish closed-ended continuity. The allegations in the proposed amended complaint do not establish that the Defendants intended to further an endeavor which would have satisfied RICO's pattern requirement. Accordingly, I conclude that the proposed amendments to the complaint would be futile.[2]

In sum, based on both the Plaintiffs' undue delay in pursuing leave to amend their complaint, as well as the futility of the proposed amendments to the RICO allegations, I conclude that the motion to amend should be denied. As previously noted, the Plaintiffs' RICO claims are the basis for federal jurisdiction in this matter. Because I previously dismissed the Plaintiffs' RICO claims, and now deny the

---

[2]  Thus, I need not address the Defendants' other arguments for dismissal of the RICO count, including their argument that the bribery allegations are conclusory and their arguments from their motions to dismiss the original complaint, which they raise again now.

18

Plaintiffs' effort to amend the complaint as to those claims, I must evaluate the Court's subject-matter jurisdiction in relation to the remaining state-law claims.

## C.   Subject-Matter Jurisdiction over the Remaining State-Law Claims

The Court's subject-matter jurisdiction over this action originally depended on the federal questions raised by the complaint's two RICO counts.   Because I previously dismissed those counts, *see* ECF No. 86 at 15, and because I have determined that the Plaintiffs' effort to amend those counts should be denied, the only counts remaining in this case are state-law claims.

When a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over remaining state law claims.  *See* 28 U.S.C.A. § 1367(c)(3) (West 2020).  In such circumstances, a court "must reassess its jurisdiction, this time engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue."  *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (citing *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256–57 (1st Cir. 1996)).  Those considerations include "the interests of fairness, judicial economy, convenience, and comity."  *Desjardins v. Willard*, 777 F.3d 43, 45 (1st Cir. 2015) (quoting *Camelio,* 137 F.3d at 672).

"The Supreme Court has made pellucid 'that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Rivera-Díaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387, 392 (1st Cir. 2014) (alteration omitted) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)).  Here, the

parties have not begun discovery, and trial remains distant.  Thus, the balance of factors weighs against maintaining jurisdiction over the remaining state-law claims, and this matter should be remanded to state court.  Accordingly, I do not evaluate the sufficiency of the state-law claims included in the Plaintiffs' proposed amended complaint or whether those amendments should be permitted.  Those determinations are best made by the Maine Superior Court which will exercise jurisdiction over this dispute.

## V.  CONCLUSION

For the preceding reasons, it is **ORDERED** that the Plaintiffs' Second Motion for Leave to File *Second Amended Complaint* (ECF No. 94) is **DENIED** as to the RICO counts and is **DENIED** as moot as to the remaining state law counts.  The case is **REMANDED** to the Maine Superior Court.  Accordingly, it is further **ORDERED** that the Plaintiffs' Motion to Remand to State Court (ECF No. 45) is **DENIED** as moot.

**SO ORDERED.**

Dated: May 29, 2020

_____/s/ Jon D. Levy_____
**CHIEF U.S. DISTRICT JUDGE**